J-S56020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS ALGENIS DAVILA-LUGO | |
| Appellant | No. 1445 MDA 2015 |

Appeal from the Judgment of Sentence July 24, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004053-2014

BEFORE: BENDER, P.J.E., PANELLA, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J. **FILED AUGUST 12, 2016**

Appellant, Luis Algenis Davila-Lugo, appeals from the judgment of sentence entered July 24, 2015, by the Honorable Scott Arthur Evans, Court of Common Pleas of Dauphin County. We affirm.

A jury convicted Appellant of first-degree murder and abuse of a corpse. The murder conviction stems from Appellant's fatal manual asphyxiation of Erica Klinger. The trial court sentenced Appellant to a mandatory period of life imprisonment for the murder conviction and to a consecutive sentence of one to two years' imprisonment on the abuse of a corpse conviction. This timely appeal followed.

_____

[*] Former Justice specially assigned to the Superior Court.

On appeal, Appellant argues that the Commonwealth presented insufficient evidence to sustain the first-degree murder conviction. Specifically, Appellant asserts that the Commonwealth did not prove he possessed a specific intent to kill.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917, 917-918 (Pa. Super. 2012) (citation omitted; brackets in original).

First-degree murder is "an intentional killing." 18 Pa.C.S.A. § 2502(a). Section 2502 defines an "intentional killing" as a "willful, deliberate and premeditated killing." *Id*., at (d). *See also Commonwealth v. Cash*, ___ A.3d ___, ___, 2016 WL 3002910, *4 (Pa., filed May 25, 2016) (noting first-degree murder conviction requires specific intent to kill). "Specific intent to

kill can be proven if the defendant knowingly applies deadly force to the person of another." *Commonwealth v. Simmons*, 662 A.2d 621, 629 (Pa. 1995) (citation omitted).

Appellant only challenges whether the Commonwealth established that he murdered the victim with the specific intent to kill. At trial, the Commonwealth presented the testimony of Maria Lara, Appellant's girlfriend.

Lara explained that she, the victim, and Appellant were all staying in the same motel room. *See* N.T., Trial, 6/8/15-6/11/15, at 197. Appellant and the victim had a tempestuous relationship. *See id*., at 198. They argued and eventually, Appellant "went up to her and just popped her one." *Id*. He "just pounded her." *Id*., at 202. Lara did not see this attack, as she was facing the other way, but heard "the crack of her head." *Id*. She heard the sound of "flesh hitting flesh and then her head bouncing off the headboard." *Id*., at 203.

Lara then observed Appellant dragging the victim off the bed by her hair and into the bathroom. *See id*. Appellant closed the bathroom door. *See id*. After "a couple minutes," *id*., at 207, Lara got up, opened the bathroom door, and saw Appellant "strangling her like in a choke hold," [sic] *id*., at 203. Lara observed the victim struggling to free Appellant's arms from her neck. *See id*., at 209. Appellant was holding the victim in a chokehold such that her feet were off the ground. *See id*. Frightened, Lara shut the door and sat on her bed. *See id*., at 210.

Appellant later emerged from the bathroom while holding up the victim and then "dumped her on the floor." *Id*. Lara watched the victim's body "jerk." *Id*., at 204. Appellant explained to Lara, "[t]hat is what happens to a dead body, they twitch." *Id*., at 210-211.

Michael Johnson, MD, PhD, a forensic pathologist, testified that the cause of death was manual asphyxiation and was a homicide. *See id*., at 266.

The evidence presented plainly establishes, beyond a reasonable doubt, that Appellant possessed the specific intent to kill the victim. Appellant manually strangled the victim to death, which is sufficient to support a finding of the specific intent to kill. *See*, *e.g.*, *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007) ("[D]eath by manual strangulation was sufficient to establish that perpetrator acted … with a specific intent to kill."); *Simmons*, 662 A.2d at 629 ("Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder.").

Appellant, however, maintains that he advanced a defense of diminished capacity, grounded in voluntary intoxication based on an alleged bad batch of heroin, which, he claims, negated the element of specific intent. According to Appellant, the Commonwealth failed to disprove his defense. We disagree.

The defense of diminished capacity "is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011) (citations omitted). A diminished capacity defense negates the element of specific intent and first-degree murder is mitigated to third-degree murder. ***See id***.

"The mere fact of intoxication" does not establish the defense. ***Hutchinson***, 25 A.3d at 312 (citations omitted). Rather, "[t]o establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." ***Id***. (citing, among others, ***Commonwealth v. Blakeney***, 946 A.2d 645, 653 (Pa. 2008) ("Intoxication, however, may only reduce murder to a lower degree if the evidence shows that the defendant was 'overwhelmed to the point of losing his faculties and sensibilities.'")). "[T]he Commonwealth must prove beyond a reasonable doubt that … at the time of the killing the defendant was not acting with a diminished capacity." ***Commonwealth v. Zettlemoyer***, 454 A.2d 937, 947-948 (Pa. 1982) (citation omitted).

The evidence of diminished capacity came from Lara's testimony. Lara testified that once they got to the motel room Appellant went into the

bathroom and "does his, you know, shoot up [heroin] or whatever he does…." N.T., Trial, 6/8/15-6/11/15, at 197. Lara explained that once he came out of the bathroom "he is saying he doesn't feel good." *Id*., at 198. It was shortly after he came out of the bathroom that he and the victim got into a verbal argument that escalated into Appellant attacking the victim. Lara testified that Appellant "gets violent" when he consumes heroin that makes him sick. *Id*., at 242. And she agreed with defense counsel that Appellant acted differently that night than he usually did after using heroin. *See id*., at 243. The trial court instructed the jury on the defense. *See id*., at 361-362.

Appellant possessed the sufficient mental capacity to form the specific intent required for first-degree murder. Appellant argued with the victim, dragged her into a bathroom, closed the bathroom door, and then manually strangled her. He then carried her out of the bathroom, dropped her body on the floor, and explained to Lara that the "twitching" and "jerking" of the body are indicia of death. These are certainly not the actions of a person "overwhelmed to the point of losing his faculties and sensibilities." *Blakeney*, 946 A.2d at 653 (internal quotation marks omitted). Appellant's closing of the bathroom door after dragging the victim in there is an especially striking indicator that he acted with premeditation and deliberation.

Appellant maintains that his actions after the murder are irrelevant to a determination of his specific intent to kill. We disagree. It strains credulity that he was overwhelmed to the point of losing his faculties and sensibilities during the murder, but that, somehow, *immediately after*, his mental state changed. We find that his actions just after the killing demonstrate that he was in full control of his faculties and was not laboring under a diminished capacity. **See Commonwealth v. Faulkner**, 595 A.2d 28, 40 (Pa. 1991) (finding letters written to bank after killing inquiring about bank balance and other matters concerning defendant's account relevant and admissible in first-degree murder prosecution to show that defendant possessed requisite mental state necessary to support specific intent to kill); **Commonwealth v. Stark**, 526 A.2d 383, 391 (Pa. Super. 1987) (finding videotape of defendant being fingerprinted after arrest for suspected first-degree murder relevant to refute defendant's claim that he was too intoxicated to form specific intent to kill); *cf*. **Commonwealth v. Gonzalez**, 858 A.2d 1219, 1223 (Pa. Super. 2004) ("Actions of the accused that occur before, during, *and* after are admissible as evidence to show malice."). Undoubtedly, the jury did the same.

Immediately after dropping the victim on the floor, Appellant instructed Lara to go out and get into the victim's car. **See** N.T., Trial, 6/8/15-6/11/15, at 211. Appellant placed a sheet over the body, covered the head with a plastic bag, and carried the body to the car, placing it in the

back seat. **See id**., at 211-213. These are the actions of a person in firm control of his faculties. Ultimately, Appellant drove to a deserted location and disposed of the body.

The Commonwealth disproved the diminished capacity defense and presented evidence, beyond a reasonable doubt, that Appellant acted with the specific intent to kill.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2016